|   |   |
|---|---|
| FELTON L. MATTHEWS ) | 3:08-CV-00387-LRH-VPC |
| Plaintiff, ) |  |
| vs. ) | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| THE STATE OF NEVADA, et al., ) |  |
| Defendants. ) | July 27, 2009 |

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's "motion for 2nd preliminary injunction due to outrageous conduct of state government: request for transfer due to court interference by state!" (#33). Defendants opposed (#36), and plaintiff replied (#51). For the reasons stated below, the court recommends that plaintiff's motion for second preliminary injunction (#33) be denied.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Felton Matthews ("plaintiff") is currently incarcerated by the Nevada Department of Corrections ("NDOC") at Ely State Prison ("ESP") (#28). Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that defendant violated his First, Eighth and Fourteenth Amendment rights while he was incarcerated at ESP and held at the Clark County Detention Center ("CCDC"). *Id*. Plaintiff names as a defendants the Legislature of the State of Nevada; the State of Nevada; Jim Gibbons, Governor of Nevada[1]; Catherine Cortez Masto, Attorney General for the State of Nevada; "CCDC/unknown," a "jailhouse officer/Admin" employed at the Clark

---

[1] Following all briefing on the instant motion, the parties agreed to voluntarily dismiss this action with respect to defendant Legislature of the State of Nevada and Governor Jim Gibbons (#s 75, 76). Defendant Legislature of the State of Nevada's motion to dismiss (#43) was denied as moot (#88). Further, the remaining defendants' motion to dismiss (#47) was denied as moot with respect to defendant Governor Jim Gibbons (#96, fn.2).

1  County Detention Center;[2] Bernard Curtis, chief of the Nevada Department of Parole and
2  Probation; Kechia English, Investigator for Child Protective Services; Howard Skolnik, Director
3  of NDOC; Adam Endel, Associate Warden of Programs at ESP; and Joyce Thomson, caseworker
4  at ESP.[3] *Id*.

5  Plaintiff's complaint includes five counts of alleged constitutional violations, as follows
6  (#28):

7  Count I: Plaintiff alleges that defendants violated his Fourteenth Amendment right to due
8  process and equal protection, and to protection from *ex post facto* implementation of law. Plaintiff
9  claims that by passing "new laws that increase [his] punishment and tier rating as a convicted sex
10  offender where they give lesser tier ratings to serial and repeat offenders," defendants have
11  violated his Fourteenth Amendment rights. *Id*. p. 5. Plaintiff contends that Assembly Bill 579 and
12  Senate Bill 471 apply *ex post facto* penalties on him and others similarly situated, by increasing
13  his sentence and putting him at risk of attack. *Id*. p. 6-10.

14  Count II: Plaintiff alleges that defendants violated his Fourteenth Amendment rights to
15  equal protection and due process by failing to remove "libel and slander" from his file, in
16  violation of the policy of NDOC administrative regulations to "correct data submitted by third
17  parties." *Id*. p. 11. Plaintiff also claims that Nev. Rev. Stat. 213.30 creates *ex post facto* penalties

---

[2] On June 5, 2009, plaintiff moved to substitute Douglas C. Gillespie, Clark County Sheriff for "CCDC/unknown" (#87).

[3] Plaintiff filed a "motion to dismiss defendants K. English &... Bernard Curtis without prejudice w/request to file Magistrate's order of facts, findings, and conclusions for 09-cv-N-160-BES (VPC)" (#77). Defendants filed a response stating that they had no opposition to dismissing these two defendants; however, a dismissal was not necessary because defendants English and Curtis were never served in this case (#80). Plaintiff then sent a letter to the Clerk requesting both that defendants English and Curtis be dismissed and that plaintiff be granted an extension of time to serve these defendants (#83). As the court was unclear of plaintiff's intentions, on May 14, 2009, it ordered plaintiff to file a notice with the court by Friday May 29, 2009, and choose whether he wished to proceed in this case against defendants English and Curtis, or whether he wished to dismiss these defendants from this action (#84). The court stated that if plaintiff failed to make his intentions clear, "the court will proceed with service of process on Kechia English and Bernard Curtis and will strike plaintiff's motion to dismiss." *Id*. On June 15, 2009, plaintiff requested the court issued him a summons and a copy of the complaint to serve upon defendants English and Curtis (#90). Defendant English was served on July 10, 2009 (#94), and defendant Curtis was served on July 16, 2008.

and affects his rights under his plea agreement. *Id*. p. 12.

Count III: Plaintiff claims that defendants violated his Eighth Amendment right against cruel and unusual punishment when Dr. Pagliani "deliberately committed malpractice," and when parole and probation and Dr. Pagliani failed to "address or correct" "libel and slander," which is included in his file based on statements of third parties. *Id*. p. 13.

Count IV: Plaintiff alleges that defendants violated his Eighth Amendment right against cruel and unusual punishment. Again, plaintiff references false statements included in his file, and states that he is "entitled to protection against cruel and unusual punishment in the form of harrassment (sic) and libel and slander by CCDC and NDOC employees." *Id*. p. 14. Plaintiff states that he has been held in "illegal and excessive" administrative segregation because defendants Endel and Skolnik will not remove the information from his file. *Id*. p. 15.

Count V: Plaintiff claims that defendants have violated his First Amendment right to access the courts because "the exhibits A-I in a memorandum to Pershing County Court did not reach and [he] was not served a motion for abeyance which delayed justice on a state level which could have given [him] relief on at least a records correction." *Id*. p. 16.

The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Preliminary Injunction Standard

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, --- U.S. ----, ----, 128 S.Ct. 2207, 2219, 171 L.Ed.2d 1 (2008) (citations and quotation omitted). Instead, the instant motion requires the court to "'balance the competing claims of injury and . . . the effect of the granting or withholding of the requested relief.'" *Winter v. Natural Res. Def. Council*, --- U.S. ----, ----, 129 S.Ct. 365, 376 (2008) (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542

(1987)). A plaintiff seeking a preliminary injunction must establish the following: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest. *Id.* at 374 (citations omitted).[4]

The Prison Litigation Reform Act (PLRA) imposes certain guidelines on the prospective relief to be granted to an inmate litigant challenging prison conditions:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). "Section 3626(a) therefore operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators – no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

**B.   Analysis**

Plaintiff alleges that the named defendants as well as other state actors at ESP and LCC have violated his First and Fourteenth Amendment rights by interfering with his legal mail, thus, violating his right to access the courts (#33). Plaintiff claims that defendants tampered with his mail on four occasions, and that employees at ESP and LCC singled out plaintiff's mail and failed

---

[4] Before *Winter*, the courts in this circuit occasionally applied an alternative, "sliding-scale" test for issuing a preliminary injunction which allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005). In *Winter*, the Supreme Court did not directly address the viability of the balancing approach. *Winter*, 129 S.Ct. at 392 (Ginsburg, J., dissenting) ("[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high ... This Court has never rejected that formulation, and I do not believe it does so today."). In any event, the court will consider prospective relief based on all four of the traditional preliminary injunction requirements. Applying the balancing approach here would not lead to a different result, as Plaintiff has not made a strong showing on any single factor for injunctive relief. *See infra.*

4

to send certain items. *Id*. Plaintiff also claims that certain state court judges have ordered prison employees to tamper with plaintiff's mail. *Id*. Because of this alleged mail tampering, plaintiff requests the following injunctive relief:

> 1) <u>Order a [transfer] now</u>! If the plaintiff has to stay in Ad-Seg so be it. At least his legal mail will be secure. Plaintiff suggest NSP or NNCC near the courts or HDSP Ad-Seg (1 molest at HDSP before).
> 2) Issue sanctions against the defendants and injunction
> 3) Any other injunctions or relief as seen fit.

*Id*. p. 4. (emphasis in original).

### 1.  Likelihood of Success on the Merits

To obtain a preliminary injunction, plaintiff must offer evidence that there is a likelihood he will succeed on the merits of his claim. *Johnson*, 72 F.3d at 1430. "Likelihood of success on the merits" has been described as a "reasonable probability" of success. *King v. Saddleback Junior College Dist.*, 425 F.2d 426, 428-29 n.2 (9th Cir. 1970).

### a.  First Amendment Rights - Inmate Correspondence

Generally, prisoners have "a First Amendment right to send and receive mail." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curium). However a "delicate balance" must be stricken between prisoners' First Amendment rights and the discretion given to prison administrators to govern the order and security of the prison. *Thornburgh*, 490 U.S. at 407-08. Prison officials have more leeway to regulate incoming than outgoing mail because of the greater security risks inherent in materials coming into a prison. *Id*. at 413. *Turner* is applicable to regulations and policies regarding all incoming mail; therefore, regulations and policies involving incoming mail are "valid if [they] are reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

*Turner* sets out a four-part test which governs prison policies and regulations concerning incoming mail: (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether there are "alternative means of exercising the rights that remain open to prison inmates"; (3) what "the impact accommodation of the asserted constitutional right will have on guards and other inmates,

5

1  and on the allocation of prison resources generally"; and, (4) whether the "absence of ready
2  alternatives is evidence of the reasonableness of a prison regulation." *Turner*, 482 U.S. at 89-90.
3  As to the first element of the test, the *Turner* court found that in the First Amendment context it
4  is important to inquire whether the restriction operate in a "neutral fashion, without regard to the
5  content of the expression." *Id*. at 90.

6  The *Turner* test applies to the constitutional rights of both the inmates and the outsiders
7  who communicate with them. *See Thornburgh*, 490 U.S. at 411, n. 9 ("[a]ny attempt to forge
8  separate standards for cases implicating the rights of outsiders is out of step [with cases in
9  between *Martinez* and *Turner*], which all involved regulations that affected the rights of prisoners
10 and outsiders."). Finally, the court stated in *Turner* that prison officials may entirely prohibit
11 correspondence between inmates based on security concerns. *Turner*, 482 U.S. at 92-3.

### b.     Fourteenth Amendment Right to Due Process

13  The procedural guarantees of the Fourteenth Amendment's Due Process Clause apply only
14 when a constitutionally-protected liberty interest is at stake. *Tellis v. Godinez*, 5 F.3d 1314, 1316
15 (9th Cir. 1995), citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972). Liberty
16 interests can arise both under the Constitution and from state law. *Wolff v. McDonnell*, 418 U.S.
17 539, 557-58 (1974).

18  With respect to liberty interests created under the Constitution, the Court has held that
19 prisoners have a Fourteenth Amendment liberty interest in "uncensored communication by letter,"
20 although this interest is "qualified by necessity by the circumstances of imprisonment." *Martinez*,
21 416 U.S. at 417-18; *see also Frost v. Symington*, 197 F.3d 348, 353 (9th Cir. 1999) (prisoner have
22 a "Fourteenth Amendment due process liberty interest in receiving notice that...incoming mail is
23 being withheld by prison authorities"), citing *Thornburgh*, 490 U.S. at 406. This liberty interest
24 is protected from "arbitrary government invasion," and any decision to censor or withhold
25 delivery of mail must be accompanied by "minimum procedural safeguards." *Martinez*, 416 U.S.
26 at 418. The Court in *Martinez* noted that the following minimum procedures were required: (1)
27 notifying the inmate of the rejection of a letter; (2) allowing the author of the letter a reasonable
28 opportunity to protest the decision; and (3) referring any complaints to a prison official other than

1 the person who made the censorship decision. *Id*. at 418-19. The Ninth Circuit "has repeatedly
2 acknowledged that withholding delivery of inmate mail must be accompanied by the minimum
3 procedural safeguards" established in *Martinez*. *Krug v. Lutz*, 329 F.3d 692, 697-98 (9th Cir.
4 2003), citing *Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir. 2002) and *Prison Legal News v. Cook*,
5 238 F.3d 1145 (9th Cir. 2001).

6       **c. Analysis**

7   Plaintiff alleges that defendants tampered with this legal mail on four occasions. First,
8 plaintiff claims that on October 13, 2007, "the state" tampered with mail related to case 3:08-cv-
9 00322-LRH (RAM), which caused a habeas corpus petition to be dismissed (#33, p. 1). Second,
10 on January 3, 2009, defendants tampered with mail that plaintiff sent from ESP to the Clark
11 County Clerk. Plaintiff claims that he sent the action from ESP on January 3, 2009, and that it
12 reached the Clark County Clerk on January 5, 2009. However, the files were "held up 5 days,"
13 and were not stamped received or filed until January 10, 2009. *Id*. Plaintiff states that this action
14 was dismissed. *Id*. Third, on January 11, 2009, plaintiff sent another petition for habeas corpus
15 to the state court. However, the petition never reached the state court, and was never filed. *Id.* p.
16 2. Fourth, on January 28, 2009, plaintiff claims that Deputy Attorney General Heather Proctor
17 informed him that his appeal of case 3:07-cv-00516-BES (RAM) never reached the Ninth Circuit,
18 and that she is attempting to request the Ninth Circuit dismiss his appeal on this basis. *Id*.

19   Defendants argue the plaintiff has not demonstrated a probability of success on the merits
20 because plaintiff cannot prove that ESP or LCC actors tampered with his outgoing legal mail
21 (#36). With respect to plaintiff's allegations of mail tampering on October 13, 2007, defendants
22 claim that mail logs from LCC do not indicate that plaintiff mailed any outgoing legal mail on this
23 day, and "[w]ithout actual evidence from Plaitniff that he did mail something on that date,
24 Defendants believe Plaintiff is mistaken regarding the date of mailing for his document." *Id*. p.
25 3. With respect to plaintiff's mail to the Clark County Clerk, defendants argue that they cannot
26 control what happens to a document once it leaves their control. *Id*. Plaintiff admits that it took
27 only two days for the mail to reach the Clark County Clerk's office, but that the document was
28 not filed for an additional five days. *Id*. With regard to plaintiff's state habeas action, the ESP

1  mail log shows it was mailed on January 12, 2009, the first business day after plaintiff claims he
2  mailed the petition. *Id*. Finally, with regard to plaintiff's Ninth Circuit Appeal, "[p]laintiff has not
3  provided the date on which he allegedly mailed this document, preventing the Defendants from
4  disproving his allegations of mail tampering." *Id*. p. 4.  Defendants also argue that they are not
5  responsible for the processing of plaintiff's legal mail. *Id*. Finally, the court should grant
6  deference to defendants' decision to house plaintiff as ESP. *Id*. p. 5.

7  The court agrees that plaintiff has not demonstrated that he is likely to succeed on the
8  merits of his First Amendment claim in count V, as the allegations do not indicate that defendants
9  tampered with plaintiff's legal mail.  Defendants are not responsible for delays that occurred in
10  filing plaintiff's documents in state or federal courts. Defendants have presented evidence that
11  plaintiff's mail was cataloged and sent in a timely manner (#36, ex. B), and plaintiff has failed
12  to present evidence that indicates otherwise. Further, none of the named defendants is responsible
13  for reviewing or sending plaintiff's mail. This task is done by the correctional officer in charge
14  of the mail room at ESP (#36, ex. A). Plaintiff has not indicated that any of the named defendants
15  ever processed or even came into contact with is mail. To be liable under 42 U.S.C. § 1983, a
16  defendant must have been personally involved in any alleged deprivation of plaintiff's rights.
17  There is no liability based on a theory of *respondeat superior*. Plaintiff has not demonstrated that
18  the named defendants were personally involved in any tampering of plaintiff's mail. Therefore,
19  plaintiff has not shown a likelihood of success on the merits.

**2.     Irreparable Injury**

21  To obtain a preliminary injunction, plaintiff must offer evidence that he will be irreparably
22  injured without the injunction. *Johnson*, 72 F.3d at 1430.  "Courts generally do look at the
23  immediacy of the threatened injury in determining whether to grant preliminary injunctions."
24  *Privitera v. California Bd. Of Medical Quality Assurance*, 926 F.2d 890, 897 (9th Cir. 1991)
25  *citing Caribbean Marine*, 844 F.2d at 674 ("a plaintiff must *demonstrate* immediate threatened
26  injury as a prerequisite to preliminary injunctive relief").

27  Plaintiff does not directly address irreparable injury. However, he states that numerous
28  court actions have been dismissed because defendants tampered with his mail and prevented it

1  from being sent (#33).

2  First, plaintiff claims that because defendants tampered with his mail, a request for
3  discovery never reached the court, causing a habeas petition to be dismissed. Plaintiff directs the
4  court to case 3:08-cv-00322-LRH (RAM), which is not a habeas action, and which has not been
5  dismissed. This case raises similar allegations of mail tampering; however, it is unclear what
6  information plaintiff asks the court to find in this case. Plaintiff does not indicate the case number
7  of any dismissed habeas petition. Therefore, it is impossible for the court to verify whether that
8  action was actually dismissed because the court did not receive a discovery request from plaintiff
9  or for other reasons. Therefore, plaintiff has not demonstrated irreparable injury with regard to
10 his first allegation of mail tampering.

11 Second, plaintiff claims that a state court action was dismissed because an action was sent
12 on January 3, 2009, but not filed until January 10, 2009. However, plaintiff does not allege that
13 defendants caused this delay, as he states that the action arrived at the Clark County Clerk's office
14 on January 5, 2009. Again, plaintiff has provided no case number or details of the dismissal of
15 another case. It seems improbable that a case would be dismissed based on a five-day delay in
16 filing. Plaintiff has not demonstrated that defendants' actions caused him to suffer irreparable
17 injury.

18 Third, plaintiff claims that a new state habeas action never reached the state court.
19 However, plaintiff also states that a copy of this action was served on E.K. McDaniels and the
20 District Attorney. The court does not understand how these defendants could have been served
21 in this action if it was never filed with the court. Further, defendants have provided evidence that
22 something was mailed the Eighth Judicial District on January 12, 2009, the first business day after
23 plaintiff alleges he mailed the petition. Again, plaintiff does not provide evidence that defendants'
24 actions caused him to suffer irreparable injury.

25 Fourth, plaintiff alleges that because defendants tampered with his legal mail, his appeal
26 in case 3:07-cv-00516-BES (RAM) never reached the Ninth Circuit, which frustrated his appeal
27 attempts. The court has reviewed the docket of this case. It appears that plaintiff filed a notice of
28 appeal (#44) and an amended notice of appeal (#52). The District Court transmitted both notices

to the Court of Appeals for the Ninth Circuit (#s 48 & 53). However, plaintiff failed to pay the filing fee for the appeal and a certificate of probable cause was denied (#48). Therefore, it appears that plaintiff's appeal did reach the Ninth Circuit. Plaintiff has not demonstrated that he suffered irreparable injury.

### 3. Balance of Hardships and Public Interest

Because the court concludes that plaintiff failed to demonstrate a likelihood of success on the merits and irreparable injury, the court has not addressed the balance of hardships or public interest elements.[5]

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff has failed to meet the standard for issuance of a preliminary injunction. As such, the court respectfully recommends that plaintiff's motion for preliminary injunction (#33) be **DENIED**.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

---

[5] Defendants also argue that the court should grant them deference in their decision to house plaintiff at ESP; therefore, the court should not order defendants to transfer plaintiff to another prison. The court agrees. Prison officials are granted substantial deference with regard to where prisoners are housed. Plaintiff does not have a constitutionally-protected liberty interest in being held at a given facility. *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). Therefore, the court will not order defendants to transfer plaintiff to another institution.

10

### IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for preliminary injunction (#33) be **DENIED**.

**DATED:** July 27, 2009.

_____
**UNITED STATES MAGISTRATE JUDGE**